IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SYED ASKARI,

        Plaintiff,

vs.                                                                                                                                               No. CIV 22-0984 JB/KRS

TAJ AND ARK, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Response to the Memorandum Opinion and Order to Show Cause Issued by the Honorable United States Magistrate Judge Dated January 06, 2023, filed January 27, 2023 (Doc. 8)("OSC Response"); and (ii) the Plaintiff's An Amended Complaint, filed January 27, 2023 (Doc. 9)("Amended Complaint"). Plaintiff Syed Askari appears pro se. See Amended Complaint at 5. For the reasons set out below, the Court will: (i) dismiss with prejudice Askari's 42 U.S.C. § 1983 claim for failure to state a claim; (ii) dismiss without prejudice Askari's negligence claim for lack of subject-matter jurisdiction; and (iii) dismiss this case.

**PROCEDURAL BACKGROUND**

Askari initiated this case on December 28, 2022, alleging that Defendant Taj and Ark, LLC, underpaid or evaded payment of taxes to the Internal Revenue Service ("IRS"). See Complaint, ¶ B, at 1, filed December 22, 2022 (Doc. 3). Plaintiff's original Complaint, which is not the operative complaint in this case due to the filing of the Amended Complaint on January 27, 2023, states:

> I believe that the Department of Treasury, the Internal Revenue Service is entitled to a relief of an amount including of [sic] thousands of dollars including interest

> with penalty for the past nine years for unreported income or non-payment or underpayment of the lawful portion of the taxes to the IRS. The money belongs to the IRS, and the defendant should give the money back to the government.

Complaint ¶ F, at 3.

The Honorable Kevin R. Sweazea, United States Magistrate Judge for the United States District Court for the District of New Mexico, notified Askari:

> The Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff is not a licensed attorney authorized to practice in this Court. The claims Plaintiff is asserting on behalf of the IRS should be dismissed because "[a] litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000). Furthermore, the Complaint does not allege that Defendant harmed Plaintiff. *See Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007)("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

Memorandum Opinion and Order to Show Cause at 2, filed January 6, 2023 (Doc. 7)("Order"). Magistrate Judge Sweazea ordered Askari to: (i) show cause why the Court should not dismiss this case for failure to state a claim upon which relief can be granted; and (ii) file an amended complaint. See Order at 2.

In his Response to Judge Sweazea's Order, Askari states: "This case does not include IRS as a party in this action" and the "Plaintiff purports to bring his action 'on behalf of himself only' and 'not on behalf of IRS.'" OSC Response at 1-2. Askari emphasizes that the IRS "may recover thousands of dollars in unpaid taxes for many years from the defendant." OSC Response at 2. Askari asserts that Taj and Ark's "action of tax evasion or filing a false tax document hurt and grieved plaintiff." OSC Response at 2.

In turn, Askari amended his Complaint. See Amended Complaint at 1-6. Askari's Amended Complaint asserts that the Court has jurisdiction over this action pursuant to

28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.  <u>See</u> Amended Complaint ¶ 4, at 1.  The Amended Complaint also states:

> Jurisdiction is conferred pursuant to the Constitution of the United States: Article1, § 9: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a REGULAR STATEMENT AND ACCOUNT OF THE RECEIPTS AND EXPENDITURES of all public MONEY shall be published from time to time."

Amended Complaint ¶ 5, at 1 (capitalization in original).  The Amended Complaint states that Askari "is a citizen of Texas," and that Taj and Ark "is a citizen of New Mexico," but does not assert that the Court has diversity jurisdiction over this action.  Amended Complaint ¶¶ 1-2, at 1.

Askari claims Taj and Ark violated Askari's constitutional rights by: (i) "[b]locking the IRS from issuing a Tax Deficiency-the most complicated embezzlement and tax scheme[;]" (ii) "[f]iling a False tax document[;]" and (iii) "[m]aking false accounting entries to disguise the embezzlement as payments or transfer funds between entities."  Amended Complaint ¶¶ (A)(1), (B)(1), (C)(1), at 3-4.

Askari also asserts a negligence claim stating:

> Plaintiff felt the physical and emotional pain of sorrow that comes from losing something important.  Pay to the government what belongs to the government is something important to the plaintiff.  Defendant's action of tax evasion or filing a false tax document hurt and grieved plaintiff.  Defendant's action inflicted pain and emotional suffering and distress on plaintiff.  Defendant was negligent in full disclosure of its income and payment of taxes year after year and defendant's negligence was a cause of emotional distress and painful suffering or harm to plaintiff.

Amended Complaint at 4-5.  The only relief that Askari seeks is that "defendant should pay the total taxes accumulated so far over the period of nine years with interest and late payment penalty to the IRS and show the court the IRS stamped receipt indicating the government taxes has [sic] been paid in full."  Amended Complaint at 5.  The Amended Complaint does not seek any monetary damages for Askari's physical and emotional pain and suffering.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally, and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite his failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A district court should not dismiss a pro se complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6).  While dismissal under rule 12(b)(6) generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule 12(b)(6) is not an error if it is "'"patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" Curley v. Perry, 246 F.3d at 1282 (quoting Hall v. Bellmon, 935 F.3d at 1110).

**LAW REGARDING 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action, and it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'" (quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998))(second alteration added by Nelson v. Geringer)). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010) (Browning, J.)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)(second alteration in original)).

The Supreme Court of the United States has clarified that, in alleging a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Consequently, there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens*[1] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court held that a violation of the Fourth Amendment of the Constitution of the United States "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389. Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the color of federal authority violates the plaintiff's constitutional rights. See Bivens, 403 U.S. at 389. See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. December 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concludes that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

The specific example that the Tenth Circuit uses to illustrate this principle is Rizzo v. Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit notes that the Supreme Court in Rizzo v. Goode found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan

by some of the named defendants to "'crush the nascent labor organizations.'" Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit concludes that Rizzo v. Goode stands for the principle that it is proper to "impose § 1983 liability upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." Dodds v. Richardson, 614 F.3d at 1201.

### LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"[2] Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL

---

[2]The Constitution of the United States permits -- but does not mandate -- Congress to authorize an even broader scope of federal subject-matter jurisdiction than Congress has chosen to enact: "The judicial power shall extend to all cases, in law and equity, . . . between citizens of different states." U.S. Const. art. III, § 2, cl. 1. This clause permits federal jurisdiction: (i) in cases with minimum diversity -- those in which any one party is a citizen of a different state than any opposing party -- in addition to cases with complete diversity; and (ii) in cases in which the amount in controversy is below the statutory amount-in-controversy requirement. See State Farm Fire & Cas. v. Tashire, 386 U.S. 523, 530-31 (1967).

For the federal courts to have jurisdiction over a matter, however, jurisdiction must be both constitutionally empowered and congressionally authorized. The Honorable John J. Sirica, then-Chief United States District Judge for the District of Columbia, has stated:

> For the federal courts, jurisdiction is not automatic and cannot be presumed. Thus, the presumption in each instance is that a federal court lacks jurisdiction until it can be shown that a specific grant of jurisdiction applies. Federal courts may exercise only that judicial power provided by the Constitution in Article III and conferred by Congress. All other judicial power or jurisdiction is reserved to the states. And although plaintiffs may urge otherwise, it seems settled that federal courts may assume only that portion of the Article III judicial power which Congress, by statute, entrusts to them. Simply stated, Congress may impart as much or as little of the judicial power as it deems appropriate and the Judiciary may not thereafter on its own motion recur to the Article III storehouse for additional jurisdiction. When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away.

3860748, at *12 (D.N.M. August 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)). As the Court has explained previously, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. February 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. 267, 267-68 (1806), overruled in part by Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. March 19, 2012)(Browning,

---

Senate Select Comm. on Pres. Campaign Activities v. Nixon, 366 F. Supp. 51, 55 (D.D.C. 1973) (footnotes omitted). The complete-diversity and amount-in-controversy requirements are two ways in which Congress has authorized a narrower scope of subject-matter jurisdiction than the full measure that the Constitution permits. Congress has similarly narrowed federal-question jurisdiction. Congress may authorize federal "arising under" jurisdiction over all cases in which "the constitution[] forms an ingredient of the original cause" of action. U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to all cases, in law and equity, arising under this Constitution . . . .").

> We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.

Osborn v. Bank of U.S., 22 U.S. 738, 822 (1824)(Marshal, C.J.). The federal-question jurisdiction statute, however, requires that a substantial, actually disputed question of federal law be present on the face of the well-pleaded complaint, and that its resolution be necessary to the disposition of the claim over which jurisdiction is being asserted. See 28 U.S.C. § 1331; Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 154 (1908).

J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court will discuss the two requirements in turn.

    **1.**    **Diversity of Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines her or her citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth.  See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

### 2.     Amount in Controversy.

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold.  Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. March 30, 2010)(Browning, J.).  If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims.  See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18.  Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct."  Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014).  Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated.  See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011).  While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant.  The court can then exercise supplemental

jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955. The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co. v. Owen, 574 U.S. 81, 89 (2014). The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co. v. Owen, 574 U.S. at 89.

## **ANALYSIS**

Having reviewed carefully the Amended Complaint and the relevant law, the Court will: (i) dismiss with prejudice Askari's 42 U.S.C. § 1983 claim for failure to state a claim; (ii) dismiss without prejudice Askari's negligence claim for lack of subject-matter jurisdiction; and

(iii) dismiss this case.  The Amended Complaint does not state a claim pursuant to § 1983 or Bivens against Taj and Ark, because there are no factual allegations that Taj and Ark: (i) acted under color of state or federal law; and (ii) deprived Askari of a federal right by filing false tax documents.  See West v. Atkins, 487 U.S. at 48; Bivens, 403 U.S. at 389; Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).  The Court dismisses Askari's negligence claim without prejudice for lack of subject matter jurisdiction, because there are no factual allegations indicating the amount of damages Askari seeks to recover for his state-law claims exceeds the jurisdictional amount.  See Thompson v. Intel Corp., 2012 WL 3860748, at *12.

**IT IS ORDERED** that: (i) Askari's 42 U.S.C. § 1983 claim is dismissed with prejudice for failure to state a claim; (ii) Askari's negligence claim is dismissed without prejudice for lack of subject-matter jurisdiction; and (iii) this action is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Syed Askari
El Paso, Texas

    *Plaintiff pro se*